Approved: /s/ _____
              JEFFREY C. COFFMAN
              Assistant United States Attorney

Before:   THE HONORABLE LISA MARGARET SMITH
            United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - - X

| UNITED STATES OF AMERICA | **COMPLAINT** |
|---|---|
| - v. - | Violation of 21 U.S.C. §§ 846 |
| MARK A. MARTIN, a/k/a "Meaty," | COUNTY OF OFFENSE: WESTCHESTER |
| Defendant. | 20 MJ 8834 |

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      RICHARD J. LIGHT, being duly sworn, deposes and says that he is a Task Force Officer ("TFO") with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

    1.   From in or about October 2019, through on or about August 18, 2020, in the Southern District of New York and elsewhere, MARK A. MARTIN, a/k/a "Meaty," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.   It was a part and an object of the conspiracy that MARK A. MARTIN, a/k/a "Meaty," the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

    3.   The controlled substances that MARK A. MARTIN, a/k/a "Meaty," the defendant, and others known and unknown, conspired to distribute and possess with intent to distribute were: 280 grams and more of mixtures and substances containing cocaine base, in

violation of 21 U.S.C. § 841(b)(1)(A), and mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Section 846).

The bases for my knowledge and for the foregoing charge is, in part, as follows:

4. I am a TFO with the DEA, and a member of DEA's Westchester Tactical Diversion Squad (the "TDS-WC"). I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Since approximately July 23, 2020, I and other members of the TDS-WC have been investigating the distribution of controlled substances by MARK A. MARTIN, a/k/a "Meaty," the defendant, in the area of Harrison, New York. Based on my personal involvement in this investigation, my conversations with a DEA confidential source ("CS-1"), and my conversations with other members of the TDS-WC involved in the investigation, including another DEA TFO operating in an undercover capacity ("UC-1"), I am aware of the following:

**UC-1's July 23, 2020 Purchase of Cocaine From MARTIN**

a. On July 23, 2020, I and other members of the TDS-WC established surveillance in the area outside an apartment in Yonkers, New York ("Apartment-1"), where UC-1 was to meet a man, for the first time, for the purpose of purchasing cocaine. While UC-1 waited in a car outside Apartment-1, I observed an Uber vehicle arrive outside Apartment-1. A black male, whom I identified as MARK A. MARTIN, based upon a prior booking photograph and a Facebook account in his true name, exited a rear door of the car.

b. UC-1 and MARTIN entered Apartment-1. A few minutes later, in exchange for $400, UC-1 purchased from MARTIN approximately four grams of a white powdery substance that

subsequently field tested positive for cocaine, contained in a plastic bag.

### UC-1's July 24, 2020 Purchase of Cocaine From MARTIN

c. On July 24, 2020, I and other members of the TDS-WC established surveillance in the area of Apartment-1, where UC-1 was to purchase additional cocaine from MARTIN.

d. UC-1 entered Apartment-1, and was greeted by MARTIN. UC-1 followed MARTIN into the kitchen area, where UC-1 observed MARTIN to be "cooking" cocaine into cocaine base. In exchange for $300, UC-1 then purchased from MARTIN approximately three grams of a white powdery substance that subsequently field tested positive for cocaine, contained in a plastic bag.

### UC-1's August 1, 2020 Purchase of Cocaine and Cocaine Base From MARTIN

e. On August 1, 2020, I and other members of the TDS-WC established surveillance in the area of Apartment-1, where UC-1 was to purchase cocaine and cocaine base from MARTIN.

f. UC-1 entered Apartment-1, and was greeted by MARTIN. In exchange for $2,100, UC-1 purchased from MARTIN approximately 14.5 grams of a white powdery substance that subsequently field tested positive for cocaine, plastic bag, and 13.8 grams of a white chunky substance that subsequently field-tested positive for cocaine base, both contained in plastic bags.

### UC-1's August 4, 2020 Purchase of Cocaine, Cocaine Base, and Xanax Pills From MARTIN

g. On August 4, 2020, I and other members of the TDS-WC established surveillance in the area of Apartment-1, where UC-1 was to purchase additional cocaine from MARTIN.

h. Later on August 4, 2020, MARTIN sent a text message to UC-1 stating that MARTIN was in White Plains, and the two agreed to meet in the vicinity of Gardella Park.

i. I and other members of the TDS-WC established surveillance in the area of Gardella Park, near 201 Ferris Avenue, White Plains, New York, where I observed MARTIN sitting on a bench.

j. UC-1 then called MARTIN via cellphone. MARTIN directed UC-1 to drive up Ferris Avenue. When UC-1 parked his car in front of 201 Ferris Avenue, MARTIN entered the front passenger

3

seat of UC-1's car. MARTIN stated to UC-1, in substance, that MARTIN was not going to be at the other spot in Harrison any longer, and that he had a new, better spot. Thereafter, in exchange for $2,500, UC-1 purchased from MARTIN approximately 15.3 grams of a white powdery substance that subsequently field tested positive for cocaine, and 14.9 grams of a white chunky substance that subsequently field-tested positive for cocaine base, both contained in plastic bags, as well as 100 Xanax pills.

**UC-1's August 11, 2020 Purchase of Cocaine Base From MARTIN**

   k.   On August 11, 2020, I and other members of the TDS-WC established surveillance in the area of an apartment in Yonkers, New York ("Apartment-2"), where MARTIN had directed UC-1 to meet MARTIN in order to purchase additional cocaine.

   l.   Once UC-1 arrived in his car near Apartment-2, UC-1 attempted to make contact with MARTIN via cellphone call and text message. Approximately 20 minutes later, UC-1 received a text from MARTIN to "come inside around the back of the building," and "Grey door." UC-1 entered the gray rear door of the apartment building in which Apartment-2 is located, saw a white door to his left, knocked on the white door, heard MARTIN indicate that he should enter, and entered Apartment-2, where he found MARTIN sitting on a recliner. There, in exchange for $500, UC-1 purchased from MARTIN approximately 5.6 grams of a white powdery substance that subsequently field tested positive for cocaine, contained in a plastic bag.

**August 18, 2020 Seizure of Cocaine and Cocaine Base From MARTIN**

   m.   On the morning of August 18, 2020, I and other members of the TDS-WC established surveillance in the area of Apartment-2. At approximately 9:47 a.m., UC-1 sent MARTIN a text message requesting 14 grams of powder cocaine and 40 grams of crack cocaine. UC-1 and Martin agreed upon a price of $3,950. At approximately 11:25 a.m., MARTIN sent UC-1 a message informing UC-1 that he was ready. At approximately the same, I observed a black Audi, occupied by a black male ("CC-1"), arrive and park approximately one and a half blocks from Apartment-2. CC-1 exited the car, went inside a bodega, came back out a short time later, walked to the back of the apartment building in which Apartment-2 is located, and entered the gray metal door that leads to the door to the white entry door of Apartment-2. Less than two minutes later, CC-1 exited the rear of the building through the gray metal door, returned to the black Audi, and drove away.

n. At approximately 5:04 p.m., UC-1 sent MARTIN a text message requesting that MARTIN bring the narcotics to UC-1 in Dobbs Ferry, New York. MARTIN responded by text message that he would do so. At approximately 6:19 p.m., MARTIN informed UC-1 by text message that he was on his way. At approximately the same time, I observed MARTIN walk from the rear of the building in which Apartment-2 is located, to the front of the building, and then walk to and enter a waiting car bearing an UBER sticker in its front window. I and other members of the TDS-WC stopped the car after it drove away with MARTIN inside. MARTIN initially refused my order that he exit the car. I and other members of the TDS-WC removed MARTIN from the car. As I was working to place handcuffs on MARTIN, I observed that he was holding a plastic bag in his right hand. That plastic baggie contained two other plastic baggies, one of which contained approximately 14 grams of a white powdery substance that subsequently field-tested positive for cocaine, and the other of which contained approximately 40 grams of a white chunky substance that subsequently field-tested positive for cocaine base.

6. Following the arrest of MARK A. MARTIN, a/k/a "Meaty," the defendant, on or about August 18, 2020, I and another member of the TDS-WC interviewed MARTIN. After waiving his *Miranda* rights and agreeing to speak with us, among other things, MARTIN stated, in sum and substance, that he has been distributing approximately 50 to 100 grams of cocaine base per week since October 2019, and that he had obtained the powder cocaine and cocaine base seized from his person on August 18, 2020, on consignment.

WHEREFORE, deponent respectfully requests that MARK A. MARTIN, a/k/a "Meaty," the defendant, be imprisoned or bailed, as the case may be.

/s/ Richard J. Light, cred # TF 11065, electronic signature placed by USMJ Lisa Margaret Smith with permission of the witness
Task Force Officer Richard J. Light
Drug Enforcement Administration

Sworn to before me this by reliable electronic means, specifically by FaceTime
19th  day of August, 2020

*[signature: Lisa Margaret Smith]*
_____
THE HONORABLE LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5